UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TIFFANY YIP, *et al.*,<br><br>         Plaintiffs,<br><br> v.<br><br>BANK OF AMERICA, N.A.,<br><br>         Defendant. | Case No. 2:21-cv-01254-ART-EJY<br><br>ORDER |
| A.H. HAMILTON, an individual, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br> v.<br><br>BANK OF AMERICA, N.A.,<br><br>         Defendant. | Case No. 2:22-cv-00374-ART-EJY |

This litigation arises from a wave of transaction fraud that targeted Nevada's public benefits programs during the Covid-19 pandemic. Numerous class and individual actions have been brought against Defendant Bank of America, N.A. ("BANA") over its administration of Nevada's electronic benefits payment system.

This Court ordered collective action *Yip v. Bank of America, N.A.*, 2:21-01254-ART-EJY ("*Yip*"), and putative class action *Hamilton v. Bank of America, N.A.*, 2:22-cv-00374-ART-EJY ("*Hamilton*"), be partially consolidated for pretrial purposes, including the adjudication of pretrial motions to dismiss. (*Yip* ECF No. 40; *Hamilton* ECF No. 17.) Now pending before the Court are BANA's motions to dismiss in each case. (*Yip* ECF No. 44; *Hamilton* ECF No. 22.) Also pending in *Yip* is Plaintiffs' Motion for Leave to Submit Supplemental Authority in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss. (*Yip* ECF No. 58.) For the reasons stated, the Court will grant the motions to dismiss in part and deny them in part and grant Plaintiffs' Motion for Leave to Submit Supplemental Authority.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

The *Yip* Plaintiffs filed their collective action on July 1, 2021. (*Yip* ECF No. 1.) On December 22, 2021, this case was consolidated with another collective action, *Vance, et al. v. Bank of America, N.A.*, 2:21-cv-02149-RFB-BNW, pursuant to a stipulation by the plaintiffs in both cases and BANA. (ECF No. 25.) Plaintiffs filed a First Amended Complaint ("FAC") with the additional parties on March 21, 2022. (*Yip* ECF No. 31 ("*Yip* FAC").) The FAC lists 224 individual Plaintiffs. (*Id.*)

According to the FAC, Bank of America was contracted to be the exclusive provider of the Nevada Department of Employment, Training & Rehabilitation's benefit programs, including unemployment insurance, disability insurance, paid family leave, pandemic unemployment assistance, and pandemic emergency unemployment compensation benefits (collectively "DETR benefits"). (*Id.* at ¶ 16.) When bidding for the contract, Bank of America allegedly offered to provide DETR benefits recipients with debit cards for the electronic distribution of DETR benefits and made certain representations about Bank of America's abilities to protect benefits recipients from fraud and to provide efficient and widely accessible customer service. (*Id.* at ¶¶ 13-21.) Notably, Bank of America allegedly promised that debit cardholders would receive Bank of America's "Zero-Liability coverage" for cases of fraud. (*Id.* at ¶ 14.)

Bank of America allegedly issued debit cards for DETR benefits which utilized only the magnetic stripe technology. Plaintiffs allege that the magnetic stripe technology is weaker and more susceptible to fraud than the now-industry standard chip technology, and that its use led to widespread unauthorized and fraudulent transactions resulting in the loss of significant funds to debit cardholder accounts. (*Id.* at ¶¶ 27-38, 42-47.) Bank of America allegedly failed to adequately respond to these fraud claims, including, *inter alia*, by making fraud difficult to report through long wait times and dropped calls, by denying fraud claims without investigation or explanation, by automatically and indefinitely

freezing accounts when cardholders reported unauthorized transactions, and by making assistance with these issues difficult to obtain. (*Id.* at ¶¶ 48-66.) The FAC describes the harms experienced by each of the 224 individual plaintiffs, including home evictions due to inability to pay rent for lack of access to their DETR benefits. (*Id.* at ¶¶ 67-290.)

The FAC includes twelve causes of action: (1) violations of the Electronic Funds Transfer Act ("EFTA"); (2) Due Process claims under the Fourteenth Amendment of the U.S. Constitution; (3) Due Process claims under the Nevada Due Process Clause; (4) violations of the Nevada Deceptive Trade Practices Act; (5) negligence and negligence per se; (6) breach of contract; (7) breach of implied contract; (8) breach of implied covenant of good faith and fair dealing; (9) breach of fiduciary duty; (10) breach of contract as third-party beneficiaries; (11) breach of implied covenant of good faith and fair dealing as third-party beneficiaries; and (12) unjust enrichment and money had and received.

Plaintiff A.M. Hamilton filed his putative class action complaint on March 1, 2022. (*Hamilton* ECF No. 1.) Following this Court's consolidation order, Hamilton filed an amended complaint that added three named Plaintiffs and additional allegations. (*Hamilton* ECF No. 19 ("*Hamilton* FAC").) The *Hamilton* FAC begins by describing Bank of America's contract with DETR and how the Covid-19 pandemic placed a massive strain on the unemployment system. (*Hamilton* FAC at ¶¶ 13-24.) The *Hamilton* FAC then sets forth allegations concerning Bank of America's policies and actions after Bank of America ceased its role administering DETR benefits in June 2021. (*Id.* at ¶¶ 25-29.) The *Hamilton* FAC also includes allegations related to federal investigations into BANA's administration of Nevada and other states' unemployment programs. (*Id.* at ¶¶ 30-43.)

Hamilton describes how he applied for unemployment in 2020, received a debit card from Bank of America, and "had no problem with the program" before

he accepted a job offer and destroyed his debit card. (*Id.* at ¶¶ 46-49.) He then allegedly received a Form 1099 from DETR showing that he had been paid $3,000 by DETR in January of 2022. (*Id.* at ¶ 50.) Bank of America failed to notify Hamilton of the payment despite having his contact information. (*Id.* at ¶ 51.) After Hamilton was unable to access his Bank of America account, he filed a fraud claim with DETR, but never heard back from DETR or Bank of America and cannot access his account. (*Id.* at ¶¶ 52-59.)

Plaintiff Kevin Johnson alleges that unemployment benefits paid to his BANA debit card were stolen by fraudsters, that he reported this fraud to BANA, and that BANA locked his account in response, preventing him from receiving his unemployment benefits. (*Id.* at ¶¶ 62-79.) After spending many hours on the phone with BANA and DETR, Johnson managed to get most of the fraudulent charges refunded, but not all of them. (*Id.*)

Plaintiff Kristin Jones alleges that he never received over $15,000 in benefits that DETR paid to BANA on his behalf. (*Id* at ¶¶ 80-91.) Jones alleges that he disputed the amount of benefits shown on his Form 1099 with BANA and the State of Nevada, but the matter was deemed closed with no resolution on the missing funds. (*Id.*)

Plaintiff Nikita White alleges that, after her application for unemployment benefits was approved, she never received her BANA debit card. (*Id* at ¶¶ 92-104.) After reporting this to BANA, BANA cancelled the card she was purportedly issued and sent her a new card. (*Id.*) After receiving her new card, she looked at her statements online and saw that there were fraudulent charges and missing benefits. (*Id.*) She alleges that she disputed the fraudulent charges with BANA. (*Id.*) She also alleges that she received far less in benefits than what the State of Nevada reported on her tax forms and that she has been unsuccessful in her attempts to dispute the receipt of the funds. (*Id.*)

Hamilton, Jones, and White all allege that they either have paid or will have

to pay taxes for income they never received, and that BANA continues to hold. (*Id.* ¶¶ 61, 90, 104.)

The *Hamilton* FAC sets forth two proposed classes: the Zero Liability Class and the Remainder Funds Class. (*Id.* at ¶ 105.) The Zero Liability Class is defined as "All Nevada unemployment insurance debit card account customers of Bank of America who suffered a loss based upon an unauthorized transaction." (*Id.* at ¶ 106.) The Remainder Funds Class is defined as "All Nevada unemployment insurance debit card account customers of Bank of America who had funds remaining in their account as of the date of filing of the Class Action Complaint." (*Id.* at ¶ 107.) The *Hamilton* FAC provides examples of stories posted on internet forums by debit cardholders, including examples where accounts were frozen by Bank of America after fraud was reported. (*Id.* at ¶ 112.) The *Hamilton* FAC brings five claims: (1) breach of contract for the Zero Liability Class; (2) breach of contract for the Remainder Funds Class; (3) unjust enrichment and money had and received for both classes; (4) violations of the EFTA for the Zero Liability Class; and (5) violations of the Nevada Deceptive Trade Practices Act for both classes.

After partial consolidation of *Yip* and *Hamilton* for pretrial purposes, BANA moved to dismiss both the *Yip* FAC and the *Hamilton* FAC. (*Yip* ECF No. 44; *Hamilton* ECF No. 22.) Plaintiffs responded to each of the motions to dismiss, (*Yip* ECF No. 45; *Hamilton* ECF No. 27), and BANA replied (*Yip* ECF No. 47; *Hamilton* ECF No. 28). Since briefing concluded, both parties have submitted various notices of supplemental authority and responses to those notices. (*Yip* ECF Nos. 48, 49, 50, 51, 52, 53; *Hamilton* ECF Nos. 29, 30, 31, 32, 33, 34.) Also pending in *Yip* is Plaintiffs' Motion for Leave to Submit Supplemental Authority in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss. (*Yip* ECF No. 58.)

## II.   DISCUSSION

Defendant moves to dismiss both the *Yip* and *Hamilton* Plaintiffs' claims

under Fed. R. Civ. P. 12(b)(6). A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). But even a facially plausible claim may be dismissed under Fed. R. Civ. P. 12(b)(6) for "lack of a cognizable legal theory." *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016). Thus, a claim must be both factually plausible and legally cognizable to survive dismissal.

The Court will begin its analysis with claims brought by both the *Yip* and *Hamilton* Plaintiffs before analyzing the claims brought only by the *Yip* Plaintiffs.

### A. The Shared Claims

#### 1. EFTA Violations

The *Yip* Plaintiffs, the named Plaintiffs in *Hamilton*, and the proposed "Zero Liability Class" in *Hamilton* all allege that BANA violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1963 *et seq.*, and Regulation E ("Reg E"), 12 C.F.R. §§ 1005.1 *et seq.*, by failing to comply with the required error resolution procedure.

The EFTA "establish[es] the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. §

1693(b). The EFTA and its implementing regulation, Reg E, regulate electronic fund transfers which directly affect consumer accounts. § 1963(a)(7). Under § 1693f(a), when a consumer notifies a financial institution that the consumer believes an "error" has occurred in their account, the "financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." § 1693f(a). The statute mandates specific steps the financial institution must take depending on the results of its investigation, as well as the time frames in which the steps must be taken. § 1693f(b)–(d).

To trigger a financial institution's obligations under the EFTA, consumers must identify a qualifying error. 15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.11(b). Qualifying errors include:

> (i)    An unauthorized electronic fund transfer;
> (ii) An incorrect electronic fund transfer to or from the consumer's account;
> (iii) The omission of an electronic fund transfer from a periodic statement;
> (iv) A computational or bookkeeping error made by the financial institution relating to an electronic fund transfer;
> (v) The consumer's receipt of an incorrect amount of money from an electronic terminal;
> (vi) An electronic fund transfer not identified in accordance with § 1005.9 or § 1005.10(a); or
> (vii) The consumer's request for documentation required by § 1005.9 or § 1005.10(a) or for additional information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether an error exists under paragraphs (a)(1)(i) through (vi) of this section.

12 C.F.R. § 1005.11(a)(1)(i)-(vii); *see also* 15 U.S.C. § 1693f(f)(1)-(7).

Plaintiffs generally allege that they experienced qualifying errors, notified BANA of such errors, and that BANA failed to comply with the EFTA's requirements following notice.

BANA argues for dismissal of certain claims based on a variety of purported failures in the pleadings. First, BANA argues that some Plaintiffs' claims were not

filed within the statute of limitations. Second, BANA argues that some Plaintiffs failed to allege a qualifying error as required by the EFTA. Third, BANA argues that some Plaintiffs did not provide sufficient notice to trigger its obligations under the EFTA. Fourth, BANA contends that even if Plaintiffs' claims were sufficiently pled in all other respects, they do not plausibly allege that BANA failed to meet its obligations under the EFTA. The Court will address each of these arguments in turn.

### i.  Statute of Limitations

Actions brough under the EFTA must commence "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). In its Motion to Dismiss the *Yip* FAC, BANA identified seventy-one Plaintiffs whose EFTA claims are allegedly time-barred. In its Motion to Dismiss the *Hamilton* FAC, BANA argued that Plaintiffs Johnson and Jones brought time-barred claims.

The *Yip* Plaintiffs argue that the statute of limitations is not grounds for dismissal at this stage of the litigation because many Plaintiffs' harms are ongoing. After discovery, the *Yip* Plaintiffs say they may be able to show exceptions to the statute of limitations, like equitable tolling.

On this point, the Court agrees with the *Yip* Plaintiffs and finds that dismissal for the statute of limitations is inappropriate at this stage of litigation because further discovery could plausibly affect the Court's determination of the issue. The Court will therefore deny BANA's Motion to Dismiss the *Yip* FAC on this ground. This denial is without prejudice, and BANA will be permitted to argue that the *Yip* Plaintiffs' claims are time-barred in future pretrial motions.

The *Hamilton* Plaintiffs counter BANA's argument for dismissal by arguing that in a Fed. R. Civ. P. 23 class action, "the statute of limitations for individual claims is suspended for all purported members of the class until a formal decision on class certification has been made." *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1135 (D. Nev. 1999). Thus, according to Plaintiffs, when Hamilton filed

his original complaint asserting an EFTA claim on March 1, 2022, that tolled the statute of limitations regarding the EFTA claim for all purported members of the class, including Johnson and Jones.

BANA contends that because Johnson and Jones are named Plaintiffs in the FAC, Fed. R. Civ. P. 15's relation-back doctrine governs. Here, the Court finds that Plaintiffs prevail under either theory. A claim brought by a new plaintiff relates back under Rule 15 only if (1) the original complaint gives "the defendant adequate notice of the claims of the newly proposed plaintiff"; (2) relation back does not "unfairly prejudice the defendant"; and (3) there is "an identity of interests between the original and newly proposed plaintiff." *Immigrant Assistance Project of the Los Angeles Cnty. Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 857 (9th Cir. 2002). Here, all requirements are met.

First, Hamilton's original complaint put BANA on notice of alleged EFTA violations in BANA's administration of DETR benefits. While the factual details differ in the allegations from Hamilton and those from Johnson and Jones, the Court finds that they are sufficiently similar to give BANA adequate notice. Johnson and Jones, like Hamilton, allege that BANA mishandled DETR funds in violation of the EFTA. In addition, because Johnson and Jones are "similarly situated" to Hamilton, adding the new Plaintiffs will "not cause [BANA] any prejudice in the present case." *Id.* at 858. Finally, when "the original individual plaintiff[] and the current individual plaintiffs are 'similarly situated,' the identity-of-interest requirement of Rule 15(c) is also met." *Id.* The Court therefore finds that Johnson and Jones' claims relate back to Hamilton's claim. Thus, BANA's Motion to Dismiss Johnson and Jones' claims as time-barred is denied.

### ii. Qualifying Error

Next, BANA argues that both *Yip* and *Hamilton* Plaintiffs failed to allege a qualifying error. For example, in *Yip* BANA argues that many Plaintiffs insufficiently alleged that they experience "fraud" or an unspecified "error"

1    without specifying whether those errors involved unauthorized transactions.

2    BANA also argues that the *Yip* Plaintiffs who point to an account freeze as the

3    basis for their EFTA claim fail to state a qualifying error. Similarly, BANA argues

4    that Hamilton and Jones do not allege that they experienced unauthorized

5    transactions. BANA also contends that White failed to state an EFTA claim based

6    on her dispute with BANA concerning funds that she allegedly did not receive.

7    As outlined above, a qualifying error is defined in the EFTA and its

8    implementing regulations. *See* 12 C.F.R. § 1005.11(a)(1)(i)-(vii); 15 U.S.C. §

9    1693f(f)(1)-(7). Qualifying errors include: "unauthorized electronic fund

10    transfer[s]," 12 C.F.R. § 1005.11(a)(1)(i); "[t]he omission of an electronic fund

11    transfer from a periodic statement," § 1005.11(a)(1)(iii); "[t]he consumer's request

12    for documentation required by . . . § 1005.10(a) or for additional information or

13    clarification concerning an electronic fund transfer, including a request the

14    consumer makes to determine whether an error exists," § 1005.11(a)(1)(vii).

15    Under the EFTA, an "unauthorized electronic transfer" is defined as "an electronic

16    fund transfer from a consumer's account initiated by a person other than the

17    consumer without actual authority to initiate such transfer and from which the

18    consumer receives no benefit." 15 U.S.C. § 1693a(12).

19    On this issue, the Court finds the decision in *In re Bank of Am. California*

20    *Unemployment Benefits Litig.*, 674 F. Supp. 3d 884 (S.D. Cal. 2023) instructive.

21    In that case, determining EFTA claims on similar facts, the district court held

22    that "[a] bare allegation that fraud occurred and was subsequently reported to

23    the financial institution is insufficient to support an inference that the consumer

24    reported a qualifying error." *Id.* at 908 (internal quotation marks omitted).

25    "Individual Plaintiffs who allege they 'experienced fraud on [their] account[s]' and

26    reported the fraud to BANA, but didn't report a qualifying error, therefore haven't

27    stated claims under the EFTA." *Id.*

28    But allegations that a consumer: "(1) identified a fraudulent or

10

unauthorized transaction or withdrawal (including by looking at their account or transaction history);" and "(2) reported 'fraud' to the financial institution" are sufficient "to support the reasonable inference that the consumer reported an unauthorized transaction or withdrawal (both of which qualify as errors within the meaning of the EFTA)." *Id.* at 909.

Finally, while an account freeze is not an error covered by EFTA, Plaintiffs may allege a qualifying error related to an account freeze if they request "additional information to determine whether there was an incorrect or omitted . . . benefits transfer into the account." *Id.* A request for "additional information or clarification concerning an electronic fund transfer, including a request [made] to determine whether an error exists," is a qualifying error. *See* 12 C.F.R. § 1005.11(a)(1)(vii); *see also* 15 U.S.C. § 1693f(f)(6).

Under these standards, some *Hamilton* Plaintiffs have failed to state an EFTA claim. For example, Hamilton fails to allege a qualifying error. The *Hamilton* FAC says that once Hamilton found employment, he destroyed his BANA card. Then, he received a 1099 from DETR that showed that he had been paid $3,000 by DETR after he found employment. Hamilton alleges he never received the funds and was never notified about them. But because he did not have access to his BANA account when he received the 1099, Hamilton was unable to identify a fraudulent or unauthorized transaction or withdrawal. Thus, he did not identify a qualifying error. Additionally, the FAC does not include any allegations that Hamilton contacted BANA and requested information. Thus, Hamilton's claim is dismissed with leave to amend for failure to state a qualifying error.

Similarly, Jones also fails to identify an unauthorized transaction in the FAC. Jones' allegations are based on differences between the funds he received on his BANA debit card and the benefits DETR says it paid him. This discrepancy alone does not allege a qualifying error. But, unlike Hamilton, Jones alleges that he contacted BANA and disputed the amount. The Court finds this allegation

sufficient to allege a qualifying error based on a request for additional information to determine whether there was an incorrect or omitted benefits transfer into the account. *See* 12 C.F.R. § 1005.11(a)(1)(vii); *see also* 15 U.S.C. § 1693f(f)(6). The Court therefore denies BANA's Motion to Dismiss Jones' claim for failure to allege a qualifying error.

Johnson clearly alleges unauthorized transactions, so his claim will not be dismissed for failure to allege a qualifying error. (*Hamilton* FAC at ¶ 65-67.)

White also clearly alleges unauthorized transactions, so her claim will not be dismissed for failure to allege a qualifying error. (*Hamilton* FAC at ¶ 99-100.)

To the extent that White alleges a separate EFTA claim based on benefits that were missing from her BANA account, she fails to allege a qualifying error because that claim does not identify a fraudulent or unauthorized transaction or withdrawal. (*Hamilton* FAC at ¶ 98.) White's allegations about her disputes with BANA also do not state that she requested additional information to determine whether there was an incorrect or omitted benefits transfer into the account, only that she reported fraudulent charges. (*Hamilton* FAC at ¶ 100.) Thus, White's separate EFTA claim based on missing benefits is dismissed with leave to amend for failure to allege a qualifying error.

The Court also dismisses with leave to amend all EFTA claims of *Yip* Plaintiffs who fail to allege a qualifying error, consistent with the standards and analysis set forth in this Order. The *Yip* Plaintiffs may either file a second amended complaint that remedies the deficient claims and removes Plaintiffs who cannot allege a qualifying error or file a status report with the Court identifying which Plaintiffs in the *Yip* FAC have alleged a qualifying error, consistent with this Order.

### iii.  Sufficient Notice

Next, BANA argues that both *Yip* and *Hamilton* Plaintiffs failed to provide sufficient notice to BANA to trigger BANA's obligations under the EFTA. To trigger

a financial institution's obligations under the EFTA, a consumer's notice must "[i]ndicate[ ] why the consumer believes an error exists and include[ ] to the extent possible the type, date, and amount of the error." 12 C.F.R. § 1005.11(b)(1)(iii); *see also* 15 U.S.C. § 1693f(a)(3). Requests for additional information or documentation need not include the amount of the error. 12 C.F.R. § 1005.11(b)(1)(iii). In addition, the notice must "enable[] the institution to identify the consumer's name and account number." 12 C.F.R. § 1005.11(b)(1)(ii).

BANA says all *Yip* Plaintiffs failed to allege that they provided sufficient notice. Specifically, BANA argues that the *Yip* Plaintiffs failed to make any allegations that they provided BANA with an explanation of why they believed an error existed or the amount of the error. BANA makes the same argument as to all *Hamilton* Plaintiffs, and BANA specifically argues that Johnson's allegation that he "reported the fraud," (*Hamilton* FAC ¶ 67), to BANA is insufficient to state a claim under the EFTA. According to BANA, general allegations that Plaintiffs reported fraud are insufficient.

BANA is correct that Plaintiffs must allege they provided notice to BANA of any qualifying error in order to maintain an action under the EFTA. But BANA overstates the degree of specificity required to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. "Factual allegations sufficient to support a plausible inference are sufficient to state a claim under the Federal Rules." *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d at 911. So long as Plaintiffs allege notice that could support a plausible inference that they provided BANA with the statutorily required information, their claims will not be dismissed.

For example, Hamilton failed to plausibly allege that he gave BANA sufficient notice of a qualifying error. In fact, nowhere in the *Hamilton* FAC does Hamilton allege that he notified BANA of any fraud, error, or unauthorized transaction. Hamilton's claim is therefore dismissed with leave to amend.

Johnson, on the other hand, plausibly alleges that he gave BANA sufficient notice of fraudulent activity on his account. Johnson's allegations include that he experienced "a rash of fraudulent charges," that fraudsters were "withdrawing money in Georgia, Detroit, England, and other places in Europe," and that he "reported the fraud" to BANA. (*Hamilton* FAC ¶¶ 65-67.) It is reasonable to infer that Johnson shared all the information in these allegations with BANA when he reported the fraud. Information that the fraudulent activity took place in other states and countries is sufficient to satisfy the requirement for an explanation of why Johnson believed an error existed. Further, linking the fraudulent activity to specific locations would allow BANA to determine the amount of the error. Thus, Johnson has plausibly alleged sufficient notice. The Court will therefore deny BANA's Motion to Dismiss Johnson's claim on this ground.

Jones alleges that he disputed the amount of his error with BANA. (*Hamilton* FAC ¶ 86.) He also provides allegations about why he believed an error existed. (*Hamilton* FAC ¶¶ 84-85.) Jones has alleged sufficient notice to maintain a claim under the EFTA.

Similarly, White alleges that she disputed specific fraudulent charges with BANA, and her allegations include specific amounts. (*Hamilton* FAC ¶¶ 99-100.) White has therefore alleged sufficient notice for her EFTA claim related to the fraudulent charges. On the other hand, her allegation concerning funds missing from her account fails to allege notice to BANA. She merely says that she "continues to unsuccessfully dispute the receipt of these funds. (*Hamilton* FAC ¶ 103.) The Court cannot determine, based on these allegations, if she is disputing receipt of the funds with DETR or BANA. Thus, White's EFTA claim related to benefits missing from her account is dismissed with leave to amend.

As above, the Court also dismisses with leave to amend all EFTA claims of *Yip* Plaintiffs who fail to allege sufficient notice, consistent with the standards and analysis set forth in this Order. The *Yip* Plaintiffs may either file a second

14

amended complaint that remedies the deficient claims and removes Plaintiffs who cannot allege sufficient notice or file a status report with the Court identifying which Plaintiffs in the *Yip* FAC have alleged sufficient notice, consistent with this Order.

### iv. BANA's Obligations under the EFTA

Finally, BANA argues that even if the *Yip* and *Hamilton* Plaintiffs succeed in establishing all other elements of their EFTA claims, they have failed to plausibly allege that BANA's conduct violated the EFTA.

The *Yip* and *Hamilton* Plaintiffs allege a variety of EFTA violations by BANA, (*Yip* FAC ¶ 294; *Hamilton* FAC ¶¶ 138-139), all tied to specific statutory and regulatory provisions, *see* 15 U.S.C. § 1693f(a)-(d). Most relevant to this motion are allegations from both sets of Plaintiffs that BANA failed to conduct adequate investigations of Plaintiffs' claims of error. *See* 15 U.S.C. § 1693f(a)-(d) (BANA's obligations under the EFTA, after receiving notice of a qualifying error, are all dependent on the result of BANA's investigation of the alleged error).

The EFTA requires that a financial institution investigate any qualifying error reported by the consumer within ten business days of receiving notice of such error. 15 U.S.C. § 1693f(a). Reg E provides that "a financial institution's review of its own records regarding an alleged error" satisfies the EFTA's investigation requirement if: "(i) The alleged error concerns a transfer to or from a third party; and (ii) There is no agreement between the institution and the third party for the type of electronic fund transfer involved." 12 C.F.R. § 1005.11(c)(4); *see also* 12 C.F.R. § 1005, Supp. I at 11(c)(4) (Official Interpretation of § 1005.11(c)(4)) ("When there is no agreement between the institution and the third party for the type of [electronic fund transfer] involved, the financial institution must review any relevant information within the institution's own records for the particular account to resolve the consumer's claim."). Thus, the EFTA "requires that any investigation under the statute include a reasonable review of the

financial institution's own records." *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d at 912 (internal quotation marks omitted).

At this stage of the litigation, "factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Lee*, 250 F.3d at 679. Applying this principle to Plaintiffs' allegations, "it is reasonable to infer that BANA's records reflect the unauthorized nature of the reported transactions and that, if reviewed, those records would have resulted in different outcomes." *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d at 912. Thus, if a Plaintiff in this action alleged that they provided BANA with notice of a qualifying error, and that in response BANA's investigation was inadequate, their claims will not be dismissed. Here, adequate investigation of a noticed qualifying error would include review of BANA's records, which would provide information about the reported error. Based on the allegations, Plaintiffs' have plausibly alleged that BANA failed to review its own records, which violates the EFTA.

Similarly, Plaintiffs who allege a qualifying error based on requests "for additional information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether an error exists" need only allege that they requested the information, and that BANA did not provide the requested information to show a violation of the EFTA. 12 C.F.R. § 1005.11(a)(1)(vii).

In *Hamilton*, Hamilton failed to allege any notice to BANA which would have triggered its obligations under the EFTA. Thus, Hamilton has not alleged any violation of the EFTA by BANA, so his claim is dismissed with leave to amend.

Johnson does not specifically allege that BANA failed to investigate the errors he reported. But Johnson does allege that BANA refused to refund fraudulent charges. (*Hamilton* FAC ¶ 74.) This allegation is sufficient to support the inference that BANA failed to review its records in its investigation of

Johnson's alleged error. Johnson has therefore plausibly alleged that BANA violated the EFTA, so his claim will not be dismissed.

Similarly, Jones alleges that he disputed the amount of funds he was paid with BANA, and that his dispute was closed with no resolution. (*Hamilton* FAC ¶ 86-88.) This allegation is sufficient to support the inference that BANA failed to review its records in its investigation of Jones' alleged error. Jones has therefore plausibly alleged that BANA violated the EFTA, so his claim will not be dismissed.

Finally, White alleges that she disputed fraudulent charges and the amount of benefits she received with BANA, and that she continues to unsuccessfully dispute the receipt of benefits. This allegation is sufficient to support the inference that BANA failed to review its records in its investigation of White's alleged error. White has therefore plausibly alleged that BANA violated the EFTA, so her claim will not be dismissed.

Here, the Court will deny dismissal of all *Yip* Plaintiffs who plausibly allege that BANA failed to review its records in response to notice of a qualifying error. In addition, the Court will deny dismissal of all *Yip* Plaintiffs who plausibly allege that BANA failed to provide information in response to requests for additional information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether an error exists. The *Yip* Plaintiffs may either file a second amended complaint that remedies the deficient claims and removes Plaintiffs who cannot allege that BANA violated the EFTA or file a status report with the Court identifying which Plaintiffs in the *Yip* FAC have alleged that BANA violated the EFTA, consistent with this Order.

### 2. Breach of Contract

The *Hamilton* FAC alleges breach of the Account Agreement with BANA based on two theories. The first relates to the "Zero Liability" class. Under the first theory, Plaintiffs assert that BANA breached Section 9 of the Account Agreement, which states that Cardholders "may" be reimbursed for certain

"unauthorized transactions," provided the Cardholders give timely notice with sufficient information to commence an investigation into the purported unauthorized transaction (the "Zero Liability Policy"). (*Hamilton* FAC ¶¶ 120-21; Ex. 5 §§ 9, 11.)

"Nevada law requires the plaintiff in a breach of contract action to show (1) the existence of a valid contract (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-920 (D. Nev. 2006) (citing *Richardson v. Jones,* 1 Nev. 405, 405 (Nev.1865)). No party disputes the existence of a valid contract.

There are important differences in the Zero Liability Policy and the requirements of the EFTA. First, the Zero Liability Policy clearly only applies to unauthorized transactions. (*Hamilton* FAC, Ex. 5 § 9.) Second, while the requirements for timely notice closely tracks the EFTA's notice period, notice under the Account Agreement must include why they believe an error occurred and the dollar amount involved, which is slightly more restrictive than the EFTA. (*Hamilton* FAC, Ex. 5 § 11.) Third, BANA has significantly more flexibility in investigating errors under the Account Agreement than it does under the EFTA. Section 9 provides that BANA's "Zero Liability" policy doesn't apply to transactions that aren't considered "unauthorized," and allows BANA to determine a transaction is "unauthorized" when it "conclude[s] that the facts and circumstances do not reasonably support a claim of unauthorized use." (*Hamilton* FAC, Ex. 5 § 9.) Similarly, Section 11 provides BANA great flexibility in investigating allegations of error. To perform under Section 11, all BANA must do is "determine whether an error occurred." (*Hamilton* FAC, Ex. 5 § 11.)

Under the terms of the Zero Liability Policy, no *Hamilton* Plaintiff alleges breach. Hamilton and Jones, for example fail to allege unauthorized transactions. White and Johnson, on the other hand, both allege unauthorized transactions. Read liberally, the Court is also satisfied that their allegations allege timely and

18

sufficient notice, including the dollar amount involved. But neither White nor Johnson adequately allege that BANA failed to reach the conclusion required by Section 9 or failed to investigate under Section 11. Thus, White and Johnson have failed to allege breach of the Account Agreement based on Sections 9 and 11. The claims of all *Hamilton* Plaintiffs for breach of the Zero Liability Policy in the Account Agreement are therefore dismissed with leave to amend.

The second theory relates to the "Remainder Funds" class. Under this theory, Plaintiffs allege that BANA failed to release the funds in their accounts as required by the Account Agreement. Plaintiffs identify three provisions that BANA purportedly breached: (1) the Zero Liability Policy (*Hamilton* FAC, Ex. 5 § 9); (2) a provision in Section 16 governing BANA's closure of an account, which provides that the cardholder "may contact the Service Center to request a check for the remaining balance" (*Hamilton* FAC, Ex. 5. § 16); and (3) a related provision in Section 16 governing cardholder-initiated closures, which similarly states that the cardholder may request a check for the remaining balance. (*Hamilton* FAC ¶¶ 124-125; Ex. 5 § 16.)

Here, the Court agrees with BANA. First, the Zero Liability Policy's plain language does not apply to these allegations that BANA failed to release funds in the accounts as required by the Account Agreement. The Zero Liability Policy applies to unauthorized transactions, not "Remainder Funds." Second, no *Hamilton* Plaintiff alleges that they closed their accounts, so the provision of Section 16 pertaining to cardholder-initiated closures does not apply. Third, the provision governing BANA-initiated closures requires that account holders "contact the Service Center to request a check for the remaining balance" to release the funds. No Plaintiff plausibly alleges this required communication. Thus, all claims brought by *Hamilton* Plaintiffs under the Remainder Funds theory are dismissed for failure to plausibly allege breach, with leave to amend.

The *Yip* Plaintiffs also bring breach of contract claims. Their allegations are

1   based on three theories: (1) that BANA failed to timely investigate, resolve, and

2   reimburse Plaintiffs for allegedly unauthorized transactions; (2) that BANA froze

3   or blocked their accounts; and (3) that BANA failed to make funds available to

4   them as instructed by DETR. (*Yip* FAC ¶¶335(a)-(h).)

5        The first theory relies on Sections 9 and 11 of the Account Agreement, like

6   the *Hamilton* Plaintiffs claim under the Zero Liability Policy. The Court therefore

7   adopts the standards and reasoning applied to the *Hamilton* Plaintiffs and applies

8   it to the *Yip* Plaintiffs. All *Yip* Plaintiffs' claims for breach of Sections 9 and 11 of

9   the Account Agreement that suffer the same deficiencies as the *Hamilton* Plaintiffs

10   are dismissed with leave to amend.

11        The second theory is based on the plain language of the Account

12   Agreement. Section 2 of the Account Agreement permits BANA to freeze an EDD

13   Cardholder's account if it "suspect[s] irregular, unauthorized, or unlawful

14   activities involved" in the account. (*Hamilton* FAC, Ex. 5 § 2.) Section 2 allows a

15   freeze to continue until the end of its investigations into its suspicions. (*Id.*) Under

16   the Account Agreement, BANA is afforded wide latitude to freeze accounts. Thus,

17   the *Yip* Plaintiffs who have failed to allege that BANA lacked requisite suspicion

18   when freezing accounts or have failed to allege that BANA did not lift an account

19   freeze after completing the investigation are dismissed with leave to amend.

20        The third theory also relies on Section 2 of the Account Agreement, which

21   states that BANA will make funds available when instructed by DETR. (*Hamilton*

22   FAC, Ex. 5 § 2.) Plaintiffs allege BANA breached Section 2 by failing to make funds

23   available when instructed by DETR by freezing Plaintiffs' access to their accounts.

24   But in addition to Section 2's funding language, the Account Agreement also

25   contains numerous provisions that allow BANA to restrict access to accounts,

26   including the freeze provision in Section 2. (*Hamilton* FAC, Ex. 5 § 2.) Plaintiff's

27   interpretation would give these provisions no effect. Thus, the court dismisses

28   the claim for breach under this theory with prejudice and without leave to amend.

### 3. Unjust Enrichment and Money Had and Received

Both the *Yip* and *Hamilton* Plaintiffs bring a claim for unjust enrichment and money had and received. Under Nevada law, a plaintiff has a valid claim for unjust enrichment when (1) "the plaintiff confers a benefit on the defendant"; (2) "the defendant appreciates such benefit"; and (3) "there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal quotation marks omitted).

This cause of action, though, "is not available when there is an express, written contract" between the parties. *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). Here, neither party disputes that the Account Agreement is an express, written, valid contract between all Plaintiffs and BANA. Plaintiffs express concern that the Account Agreement could be read to allow BANA to retain funds paid by DETR to BANA on Plaintiffs' behalf. While the Account Agreement does allow BANA to freeze accounts, (*Hamilton* FAC, Ex. 5 § 2), Section 2 only allows a freeze to continue until the end of its investigations into its suspicions (*Id.*). Moreover, Section 11 requires BANA to investigate. (*Id.* at § 11.) Thus, there is no risk that the provisions of the contract allow BANA to unjustly enrich itself with DETR benefits intended for Plaintiffs.

Thus, because a written, express, valid contract exists between Plaintiffs and BANA, the claim for unjust enrichment and money had and received is dismissed with prejudice and without leave to amend as to both the *Yip* and *Hamilton* Plaintiffs.

### 4. Violations of the Nevada Deceptive Trade Practices Act

Finally, both the *Yip* and *Hamilton* Plaintiffs allege that BANA violated the Nevada Deceptive Trade Practices Act ("NDTPA"). Under Nevada law, "[a]n action

may be brought by any person who is a victim of consumer fraud." NRS 41.600(1). Consumer fraud is defined in the statute as, among other things, a "deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." NRS 41.600(2)(e). A person engages in a "deceptive trade practice" when in the course of his or her business or occupation "he or she knowingly: . . . (c) Violates a state or federal statute or regulation relating to the sale or lease of goods or services. . . . (e) Uses an unconscionable practice in a transaction." NRS 598.0923(1). Plaintiffs allege that BANA has engaged in a deceptive trade practice under provision (c) by violating EFTA and Reg E and provision (e) by using unconscionable practices.

BANA contends that the EFTA and Reg E do not relate "to the sale or lease of goods or services," so Plaintiffs' claim under NRS 598.0923(1)(c) necessarily fails. BANA also argues that Plaintiffs fail to plausibly allege that BANA's alleged practices are unconscionable within the meaning of the DTPA. The Court disagrees with BANA on both fronts.

First, "the NDTPA is a remedial statutory scheme." *Poole v. Nevada Auto Dealership Invs., LLC*, 449 P.3d 479, 485 (Nev. App. 2019). Such statutes are afforded a "liberal construction." *R.J. Reynolds Tobacco Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 514 P.3d 425, 430 (Nev. 2022). With this framing, the Court finds it appropriate to consider the EFTA and Reg E as laws that relate to the sale or lease of goods or services. Here, BANA contracted with DETR to provide a service to Plaintiffs. Those services are regulated by the EFTA and Reg E. Thus, violation of the EFTA and Reg E is a sufficient basis for a claim under the NDTPA. And, as outlined above, some Plaintiffs have plausibly alleged violations of the EFTA and Reg E. Thus, the Court denies BANA's Motion to Dismiss the *Yip* and *Hamilton* Plaintiffs' claims for violation of the NDTPA under NRS 598.0923(1)(c).

The Court also finds that Plaintiffs' have plausibly alleged that BANA used unconscionable practices. The statute defines "unconscionable practice" as a

practice that, to the detriment of a consumer: "(1) Takes advantage of the lack of knowledge, ability, experience or capacity of the consumer to a grossly unfair degree;" "(2) Results in a gross disparity between the value received and the consideration paid, in a transaction involving transfer of consideration;" or "(3) Arbitrarily or unfairly excludes the access of a consumer to a good or service." NRS 598.0923(2)(b)(2).

Both sets of Plaintiffs allege specific practices that are allegedly unconscionable: (1) failure to adequately protect the funds placed on recipients' debit cards; (2) failure to properly respond to claims of fraud made by benefit recipients; and (3) retaining cardholders' funds despite knowledge that the funds belong to the cardholders. (*Hamilton* FAC ¶¶ 153-58; *Yip* FAC ¶¶ 317-22.) Taking these allegations as true, they are sufficient to state a claim for unconscionable practices under the NDTPA. The Court therefore denies BANA's Motion to Dismiss both the *Yip* and *Hamilton* Plaintiffs' claims for violation of the NDTPA under NRS 598.0923(1)(e).[1]

### B. The Claims Only Brought by the *Yip* Plaintiffs

#### 1. State and Federal Due Process Violations

The *Yip* Plaintiffs allege due process violations by BANA pursuant to the Fourteenth Amendment of the U.S. Constitution and pursuant to the Nevada Constitution. Specifically, they allege that by freezing Plaintiffs' accounts without any pre-deprivation hearing, they were deprived of a protected property interest in DETR benefits.

A plaintiff seeking relief under 42 U.S.C. § 1983 for violation of the United States Constitution must show that she was "deprived of a right secured by the Constitution or laws of the United States," and that "the alleged deprivation was

---

[1] To the extent the *Yip* Plaintiffs may argue that their FAC alleges other violations of the NDTPA not included in the *Hamilton* FAC, the *Yip* Plaintiffs waived their arguments against dismissal of those claims. (ECF No. 45 at 21.)

committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). When analyzing the due process clause in the Nevada constitution, "the similarities between the due process clauses contained in the United States and Nevada Constitutions . . . permit us to look to federal precedent for guidance." *Hernandez v. Bennett-Haron*, 287 P.3d 305, 310 (Nev. 2012).

BANA contends that Plaintiffs have not alleged that BANA was a state actor when it froze their accounts, nor have they alleged that due process requires notice and a pre-deprivation hearing under these circumstances. The Court disagrees.

The *Yip* Plaintiffs allege that BANA is a state actor and acted under color of state law because "it is engaged in a joint undertaking with the State to provide and administer UI and other DETR benefits under a mutually beneficial relationship and because it performs a function that is both traditionally and exclusively governmental." (*Yip* FAC ¶ 307.) Either theory is sufficient to satisfy the state action requirement. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) ("Satisfaction of any one test [of the four used in the Ninth Circuit] is sufficient to find state action."). "'Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Id.* (quoting *Lee v. Katz,* 276 F.3d 550, 554-55 (9th Cir. 2002)). "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Id.* (internal quotation marks omitted).

Accepting all allegations as true, the *Yip* FAC plausibly alleges that BANA is responsible for the administration and distribution of Nevada's DETR benefits. The Court is also satisfied that the role BANA has taken on in administering the distribution of Nevada's DETR benefits is traditionally and exclusively governmental. Specifically, the *Yip* Plaintiffs allege that BANA entered into an

1    exclusive contract with DETR in 2016 to distribute all DETR benefits. Because

2    BANA-provided debit cards were held out as the exclusive means of receiving

3    DETR benefits, the *Yip* FAC plausibly alleges that BANA was acting in a

4    traditionally and exclusively governmental role.

5          The Court holds the *Yip* FAC plausibly alleges that BANA's role in

6    administering the distribution of DETR benefits is a function that is "both

7    traditionally and exclusively governmental." *Kirtley*, 326 F.3d at 1093. Because

8    the Court holds that the allegations in the FAC satisfy the public function test, it

9    need not consider whether the FAC alleges sufficient facts to satisfy the joint

10    action test. *See id.* at 1092.

11          To state a claim for a procedural due process violation, the complaint must

12    allege "two distinct elements: (1) a deprivation of a constitutionally protected

13    liberty or property interest, and (2) a denial of adequate procedural

14    protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971,

15    982 (9th Cir. 1998). Plaintiffs have a constitutionally protected property interest

16    in the DETR benefits for which they were approved. *See Goldberg v. Kelly*, 397

17    U.S. 254, 262 (1970) (holding the procedural due process protections attach to

18    the "withdrawal of public assistance benefits" and "disqualification for

19    unemployment compensation").

20          To determine whether procedural protections are adequate, the Ninth

21    Circuit applies the three-part balancing test established in *Mathews v. Eldridge*,

22    424 U.S. 319 (1976). *See, e.g.*, *Franceschi v. Yee*, 887 F.3d 927, 936–37 (9th Cir.

23    2018) (applying the *Mathews* test). "Under *Mathews* we consider (1) 'the private

24    interest that will be affected by the official action'; (2) 'the risk of an erroneous

25    deprivation of such interest through the procedure used, and the probable value,

26    if any, of additional or substitute procedural safeguards'; and (3) the

27    government's interest in minimizing the cost and burden of additional or

28    substitute procedures." *Id.* (quoting *Mathews*, 424 U.S. at 335).

Applying the *Mathews* factors, the *Yip* Plaintiffs plausibly allege that BANA's accounting freezing procedures failed to comply with the requirements of due process. First, Plaintiffs have a protected property interest in the DETR benefits they were eligible to receive and did receive. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). Second, the *Yip* FAC plausibly alleges that the risk the challenged account freezing procedure will result in erroneous deprivation of protected interests is high. Plaintiffs' allegations include allegations that accounts were frozen without notice and that they were frozen erroneously. Third, BANA has a strong interest in preventing fraud. But that interest does not, at this point in the litigation, overcome the other *Mathews* factors. Thus, the Court finds that the *Yip* Plaintiffs have plausibly alleged due process violations under the Fourteenth Amendment of the U.S. Constitution and the Nevada Constitution. BANA's Motion to Dismiss these claims is therefore denied.

## 2. Negligence and Negligence Per Se

Plaintiffs allege that BANA was negligent in failing to (1) issue chip cards and "protect" Plaintiffs from fraud; (2) provide "effective" customer service; and (3) adequately investigate and provisionally credit their claims of unauthorized transactions. (*Yip* FAC ¶ 325.) BANA contends that these claims fail for four reasons. First, BANA argues that the claim is barred by the economic loss doctrine. Second, BANA argues that it was under no tort duty of care. Third, BANA argues that Plaintiffs' fail to allege causation. Fourth, BANA says that Plaintiffs cannot rely on theory of negligence per se based on alleged violations of the NDTPA or the Gramm-Leach-Bliley Act ("GBLA").

"[T]he economic loss doctrine cuts off tort liability when no personal injury or property damage occurred, with traditionally recognized exceptions for certain classes of claims." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009). "[C]ourts have made exceptions to allow such recovery in certain categories of cases, such as negligent misrepresentation and

professional negligence actions against attorneys, accountants, real estate professionals, and insurance brokers." *Id.* at 75. "[E]xceptions to the economic loss doctrine exist in broad categories of cases in which the policy concerns about administrative costs and a disproportionate balance between liability and fault are insignificant, or other countervailing considerations weigh in favor of liability." *Id.* at 76. These exceptions do not apply in this case.

Plaintiffs argue that they have suffered non-economic injuries due to BANA's failure to protect them from fraudulent activity. Specifically, Plaintiffs allege that their account and personal information was obtained by unknown third parties and used for unauthorized transactions, forcing them to spend significant time responding to the breach. But "the loss of money through fraudulent transactions and time due to responding to the breach are purely economic injuries." *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d at 921. Because no exception to the economic loss doctrine applies, and because Plaintiffs have failed to allege that they suffered cognizable non-economic injuries, BANA's Motion to Dismiss Plaintiffs' negligence claims under the economic loss doctrine is granted, with leave to amend.

Finally, Plaintiffs have plausibly alleged negligence per se based on alleged violations of the NDTPA. As outlined above, Plaintiffs have set forth sufficiently plausible allegations that BANA violated the NDTPA. To prevail under a negligence per se claim, a plaintiff must prove that (1) he or she belongs to a class of persons that a statute is intended to protect, (2) the plaintiff's injuries are the type the statute is intended to prevent, (3) the defendant violated the statute, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages. *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997). Here, the NDTPA exists to protect "any person who is a victim of consumer fraud." NRS 41.600(1). Plaintiffs' alleged injuries are injuries allegedly caused by consumer fraud, as defined in the statute. As outlined above, Plaintiffs have plausibly

alleged that BANA violated the statute. The Court is satisfied with Plaintiffs' causation and damages allegations. But despite these allegations, the economic loss doctrine blocks Plaintiffs' ability to recover under this theory. BANA's Motion to Dismiss this claim is granted, with leave to amend.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

The *Yip* Plaintiffs allege a cause of action based on a breach of the implied covenant of good faith and fair dealing.

"[T]he implied covenant of good faith and fair dealing . . . is part of every contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922 (Nev. 1991). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Id.* at 923. A party sufficiently alleges an implied covenant claim by identifying the contract that is the basis for the claim, identifying the conduct that constitutes breach of the covenant, and alleging that the breach caused the party damage. *Morris v. Bank of America Nevada*, 886 P.2d 454, 457 (Nev. 1994). Good faith is a question of fact. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (citing *Mitchell v. Bailey & Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980)).

The *Yip* Plaintiffs have pled the elements of the breach of the covenant of good faith and fair dealing. First, the *Yip* Plaintiffs identify the contract as the Cardholder Agreement. (*Yip* FAC ¶ 346.) Second, they identify the following conduct as BANA's breach of the covenant: failing to issue chip cards; failing to secure card, account, and personal information; failing to adequately monitor for fraudulent transactions; failing to "increase its efforts" in light of rise in number of DETR cardholders and the rise of fraud related to the pandemic; failing to ensure effective customer service; failing to warn of fraudulent use; failing to adequately process and investigate Plaintiffs' claims; failing to extend provisional

credit to Plaintiffs suffering delays in their fraud claims; and freezing accounts without a way for Plaintiffs to contest the action. (*Id.* ¶ 347.) Third, they allege damages arising out of the breach. (*Id.* ¶ 348.)

Defendants argue that the implied covenant of good faith and fair dealing cannot impose new obligations that extend beyond or contradict the agreement. But Nevada's implied covenant of good faith and fair dealing permits use of the covenant to find breach beyond the literal terms of the contract. *See J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1016 (Nev. 2004) (citing *Hilton Hotels*, 808 P.2d at 922–23).

Defendants then argue that Plaintiffs may not bring an implied covenant claim based on the same allegations underlying their express contract claim. A plaintiff "may plead both breach of contract and breach of the implied covenant of good faith and fair dealing as alternative theories of liability." *See Ruggieri v. Hartford Ins. Co. of the Midwest*, 2013 WL 2896967, at *3 (D. Nev. 2013). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Although Plaintiffs do not explicitly plead in the alternative, they have sufficiently pled the elements for breach of the implied covenant of good faith and fair dealing.

Finally, Defendants argue that the terms of the implied covenant of good faith and fair dealing alleged by Plaintiffs are too vague and fail to provide workable standards. "Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations." *Hilton Hotels*, 808 P. 2d, at 923–24. Good faith is a question of fact. *Consol. Generator-Nevada, Inc.*, 971 P.2d at 1256. Whether Plaintiffs can establish sufficient facts to show a Defendant's lack of good faith is a question to be addressed later in proceedings.

The Court therefore denies BANA's Motion to Dismiss *Yip* Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing.

### 4. Breach of Implied Contract

The *Yip* Plaintiffs allege a cause of action based on an implied contract. The Court need not address these arguments in detail. "[A]n action does not lie on an implied contract where there exists between the parties an express contract covering the same subject matter." *Rockstar, Inc. v. Original Good Brand Corp.*, No. 09-CV-1499, 2010 WL 3154120, at *6 (D. Nev. 2010) (quoting *Ewing v. Sargent,* 482 P.2d 819, 823 (Nev. 1971). Because the Court found that the Account Agreement is an express, written, valid agreement covering all conduct alleged in the *Yip* FAC, there can be no action for breach based on an implied contract. The Court therefore dismissed this claim with prejudice and without leave to amend.

### 5. Breach of Fiduciary Duty

The *Yip* Plaintiffs do not oppose dismissal of their claims of a breach of fiduciary duty. (ECF No. 45 at 22, n.4.) The Court therefore dismisses those claims without prejudice. "[A]n action does not lie on an implied contract where there exists between the parties an express contract covering the same subject matter." *Rockstar, Inc.*, 2010 WL 3154120, at *6 (D. Nev. 2010); *see also Leasepartners,* 942 P.2d at 187.

### 6. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (Third-Party Beneficiaries)

The *Yip* Plaintiffs' bring a claim for breach of contract and breach of implied covenant good faith and fair dealing claims based on the agreement between BANA and DETR, arguing that they are third-party beneficiaries of that contract. A party seeking to enforce a contract as a third-party beneficiary must plead a contract with a "clear[] . . . promissory intent to benefit the third party." *Rose, LLC v. Treasure Island, LLC*, 135 Nev. 145, 155 (Nev. App. 2019); *see Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 380 (1977) ("'[T]here must be an intent clearly manifested by the promisor to secure the benefit claimed to the third party.'"). "[T]he language of the contract must show a clear intent to rebut the presumption

that the [third parties] are merely incidental beneficiaries." *Orff v. United States*, 358 F.3d 1137, 1145 (9th Cir. 2004) (internal quotation marks omitted).

Plaintiffs have failed to make plausible allegations that they are intended beneficiaries of the contract between BANA and DETR. Plaintiff simply argues that the question of whether a third-party is an intended beneficiary is a question of fact. To survive a motion brought under Fed. R. Civ. P. 12(b)(6), Plaintiffs must point to specific factual allegations that, if taken as true, would make out a claim as a third-party beneficiary of the contract between BANA and DETR. Thus, the Court will grant BANA's Motion to Dismiss these claims, with leave to amend.

## III.   CONCLUSION

IT IS THEREFORE ORDERED that BANA's motions to dismiss in each case are GRANTED IN PART and DENIED IN PART consistent with this Order. (*Yip* ECF No. 44; *Hamilton* ECF No. 22.)

IT IS FURTHER ORDERED that the *Yip* Plaintiffs' Motion for Leave to File Document, (*Yip* ECF No. 44), is GRANTED.

Consistent with this Order, the *Yip* Plaintiffs are directed to file an Amended Complaint or a Status Report with the Court within 30 days of the date of this Order.

DATED THIS 9th day of August 2024.

_____

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

31